JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jessica L. Jacobsen

**(b)** County of Residence of First Listed Plaintiff: **Bucks**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott M. Pollins, Pollins Law, 303 W. Lancaster Ave., Ste. 1C, Wayne, PA 19087, 610-896-9909

## DEFENDANTS
Meron Medical, LLC and Insperity PEO Services, L.P.

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Zachary Silverstein - Zarwin Baum

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander |  | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability |  | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine |  | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / **PERSONAL PROPERTY** / 370 Other Fraud | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 710 Fair Labor Standards Act | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury / 380 Other Personal Property Damage | 720 Labor/Management Relations | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice / 385 Property Damage Product Liability | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights / **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | [x] 442 Employment / 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations / 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment / 535 Death Penalty | | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | | **Other:** | **IMMIGRATION** | |
| | 446 Amer. w/Disabilities - Other / 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education / 550 Civil Rights | 465 Other Immigration Actions | | |
| | 555 Prison Condition | | | |
| | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII
Brief description of cause:
Retaliatory termination, gender discrimination, sexual harassment

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ Unliquidated

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____    DOCKET NUMBER _____

DATE 12/18/2020    SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __Southampton, PA__

Address of Defendant: __Warminster, PA__

Place of Accident, Incident or Transaction: __Warminster, PA__

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __12/18/2020__      _[signature]_      __PA76334__
                          *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A. Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

**B. Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Scott M. Pollins__, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __12/18/2020__      _[signature]_      __PA76334__
                          *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSICA L. JACOBSEN** : | | |
| Plaintiff : | **CIVIL ACTION NO.** | |
| v. : | | |
| **MERON MEDICAL, LLC** : | | |
| and : | | |
| **INSPERITY PEO SERVICES, L.P** : | **JURY TRIAL DEMANDED** | |
| Defendants : | | |

# COMPLAINT

I. **INTRODUCTION**

1. Plaintiff, Jessica L. Jacobsen (JJacobsen), is suing her former employer, Meron Medical, LLC (Meron), for sex discrimination, sexual harassment and retaliation. Jacobsen is also suing Meron's outsourced human resources partner and joint employer, Insperity PEO Services, L.P. (Insperity), for retaliation. Jacobsen brings this action under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, (Title VII) and the Pennsylvania Human Relations Act, (PHRA). Meron subjected Jacobsen to a sexually harassing and gender discriminatory hostile work environment. After she complained to Meron and then to Insperity, Meron and Insperity conducted a slipshod investigation and then terminated Jacobsen in retaliation for her complaints. Jacobsen seeks back pay, reinstatement or front pay, loss of benefits, compensatory and punitive damages, interest, costs, negative tax consequence damages, injunctive and declaratory relief and attorneys' fees/expenses from Meron and Insperity.

II. **JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and Title VII. Furthermore, Defendants' conduct with regard to Jacobsen violated the PHRA, and the pendant jurisdiction of this Court is invoked to remedy those violations.

3. Jacobsen has exhausted all remedies available to her as set forth in Title VII and the PHRA by timely filing a charge on December 17, 2019 with the Equal Employment Opportunity Commission (EEOC), which charge was dual filed with the Pennsylvania Human Relations Commission. The EEOC issued a notice of right to sue to Jacobsen on October 30, 2020. This action is filed within 90 days of Jacobsen's receipt of the EEOC's notice of right to sue.

4. Venue is proper in the Eastern District of Pa. because Jacobsen's claims arose in this judicial district.

### III.   PARTIES

5. Jacobsen is a female 36 years of age who resides in Southampton, PA. Jacobsen was married in August 2019 and she changed her last name from Malloy to Jacobsen in July 2020.

6 Jacobsen worked at Meron's parent company, M&S Centerless Grinding, Inc. (M&S), and then Meron from March 2015 through October 2019.

7. Meron was formed in about 2013. Meron provides high level grinding solutions for the development and production of advanced therapies in the medical device industry. Meron is a Pennsylvania limited liability company. Malloy worked at Meron's office and warehouse located in Warminster, Bucks County, PA.

8. In about December 2019/January 2020, M&S and Meron merged with KVI Medical and a new company called KMM Group, Ltd. was formed as of around January 1, 2020. Upon information and belief, Meron remains an ongoing business and existing legal entity and that is why Meron is named in the caption and not KMM Group, Ltd.

9. Insperity provides human resources compliance, administration and support services to businesses like Meron. Insperity is a Delaware limited partnership with an office located in Conshohocken, Montgomery County, PA.

10. At all times relevant to this Complaint, Meron and Insperity were employers as defined in Title VII and the PHRA. Additionally, Meron and Insperity were joint employers of Jacobsen.

## IV. FACTUAL BACKGROUND

11. In March 2015 Jacobsen started working at M&S as the Office Manager.

12. In May 2015, Jacobsen brought to the attention of M&S President, John Shegda (Shegda), that Michelle Martin (Martin), Operations Manager, was hiding bills that she was not paying. Jacobsen confronted Martin and she tried to deny her wrongdoing. When Jacobsen spoke with Shegda about Martin, he told her that Martin had issues with other women working at M&S. At the time, Jacobsen was the only other woman working at M&S.

13. About a year later, Shegda transferred Jacobsen to work for Meron. Shegda is also President of Meron.

14. In preparation for Jacobsen to transfer to Meron, Shegda spoke with her about Tony Aoun (Aoun), Meron's Production Manager. Shegda warned her about Aoun's behavior and how he can be difficult to deal with. Shegda also warned Jacobsen that Aoun tends to be old school and chauvinistic.

15. Jacobsen learned that Aoun had previous issues with Martin and he eventually said 'I will never have a woman as a boss.' Shegda was confident that because Jacobsen was a strong woman she could handle Aoun and they could work well together.

16. Shegda later told Jacobsen in early 2018 that she was one of the members of the company on the board of directors in his succession plan that would make decisions if something happened to him.

17. Once Jacobsen started at Meron, she had repeated first-hand experience of Aoun's sexist and sexually harassing conduct.

18. For example, in about the Spring of 2017, Jacobsen was going through a divorce. She and Aoun were in the Meron kitchen when Aoun said to her "you know if I wasn't married, me and you would hook up." Jacobsen was caught off guard and told Aoun that would never happen and she doubted Aoun's wife Mel would appreciate him saying that. Aoun became angry and told Jacobsen that it would happen and probably only once because they would fight. He went on to say if they were ever out at a bar together it would definitely happen. Jacobsen told Aoun she would never hook up with a co-worker and definitely not him. Aoun was so angry with Jacobsen after this exchange that he wouldn't talk to her for two weeks afterward.

19. A few months later and during the summer of 2017, Jacobsen began dating. Aoun became obsessed with her personal life. He repeatedly asked her who she was dating. He asked her about when she was going on dates, does she have a picture of the guy, what does he do for a living. Aoun's probing of Jacobsen progressed to him asking her if she had sex and how big of a 'dick' the guy had. Aoun was persistent in his aggressive and perverse questioning of Jacobsen. This made Jacobsen so uncomfortable that she did not know what to do so she would typically just agree with whatever Aoun was saying to appease him and then she'd walk away.

20. Aoun would also incessantly talk about his personal life, particularly about when he was single. He told Jacobsen about how many girls he used to 'bang' when he was single and he was jealous now that she was single. He told Jacobsen graphic details about his sex life and how he treated women like doormats. He told her about how he met his wife on his boat and that when they were dating he got oral sex from another girl while his wife-to-be was above deck. Jacobsen did not ask for Aoun to tell her any of this. She did not ask to be questioned about her

4

own personal life. This made her extremely uncomfortable. She was in a vulnerable position and Aoun took advantage of her. She was a single mother going through a divorce who was trying to figure out a new life and wanted to escape her personal challenges while she was at work.

21. In a July 2017 group text, Aoun said 'never send a girl out to do a man's job.'

22. Jacobsen was the only female in the building at Meron during the day and Aoun treated her differently than all of the male employees. Two women had previously worked at Meron, and Aoun said he did not want them there and that women don't belong in the shop.

23. Around this time, Jacobsen spoke with Susan Manno, who was an HR representative with Insperity. Ms. Manno had visited Meron on multiple occasions. Ms. Manno told Shegda that Aoun had no emotional intelligence, was visibly chauvinistic and had no experience working with women. Shegda did not take this feedback seriously and Aoun never received any coaching or training to deal with his sexist conduct.

24. In May 2018, Aoun verbally lashed out at Jacobsen. He yelled at her saying 'Shut up! I don't like you! No one likes you, you don't belong here!' He said that she was the cause of all of the drama in the shop. Jacobsen complained to Shegda and he seemed annoyed that she was complaining to him about Aoun's harassing and sexist conduct.

25. On July 24, 2018, Aoun commented that if Jacobsen wore certain pants to work that 'the guys will walk around with boners all day.'

26. On January 15, 2019, which was a Tuesday, Jacobsen took a day off. On Tuesdays, Meron had weekly values meeting. At the next values meeting later in January, Jacobsen heard Aoun and some of the other men talking about how they enjoyed the meeting last week since it was all guys and they were able to vent about their significant others or in-laws without any women around.

27. On April 26, 2019, Meron and M&S had a company picnic. During the picnic, Aoun told Jacobsen about something that happened over the weekend that he was proud of. He told her about how he and his wife were out on Saturday night and ended up at an M&S co-worker's house. Aoun said he and his wife were parked outside and got naked and started having sex. He said one of the guys from the shop opened his truck's door and saw he and his wife naked and having sex. Jacobsen was offended by Aoun telling her this.

28. On July 1, 2019 at a dashboard meeting, Shegda questioned Jacobsen about inventory numbers she presented that were lower than numbers previously provided by Aoun. Shegda was totally supportive of Aoun, who was on vacation and not present at this meeting. Shegda belittled Jacobsen in front of her peers and said that 'maybe you don't understand how to do inventory.'

29. On August 20, 2019, Aoun asked Jacobsen if she was planning to have kids. He knew she was getting married at the end of the month. He had asked her this several times before and she was offended every time he asked her about this. Jacobsen believed Aoun only wanted to know if she was planning to have kids because he probably thought she would just quit after becoming a mother.

30. In addition to the sexually harassing and gender discriminatory conduct described above, throughout Jacobsen's tenure at Meron, Aoun made repeated sexist comments, including telling her on days he thought she was unpleasant that 'you must be getting your period' or 'it must be that time of the month.' Whenever Jacobsen returned to the office after taking time off or working from home, Aoun would say things like 'we love when you aren't here, we get to pee with the door open.' Aoun commented about how Jacobsen dressed by saying she looked frumpy. He commented about her breasts saying that 'the first thing guys notice about you is

6

your boobs.' He told her about his wife having breast implants and said 'you definitely don't have to worry about that.'

  31. After enduring pervasive sexist behavior from Aoun and Shegda refusing to take prompt or effective remedial action in response to her complaints, Jacobsen emailed Shegda about Aoun on September 16, 2019 as follows:

From: Jessica Malloy
Sent: Monday, September 16, 2019 8:57 AM
To: John Shegda
Subject: Please read

John,

After much reflection on the uncomfortable issues with Tony, more specifically, the incident that occurred during this past summer wherein Tony disrespected me verbally and acted unprofessionally. Since that time, there has been a disengagement in the internal business communications between me, you and Tony that are indeed relevant to my responsibilities and duties. You are unresponsive to my emails, not interacting with me on a daily basis, I have been removed from group text messages and my requests to communicate with you have been ignored. The air of hostility is evident. The pending merger with KVI is being talked about by Tony with others and I have not been included. I am a Manager and should be included in a business changing event. I am a key team player.

The disrespect and hostile actions cannot be excused by your labeling him "Chauvinistic". That is unacceptable on all fronts. It is evident that I have been treated differently and it is becoming uncomfortable for me and inflicting mental distress.

I would very much like a resolution.

Thank you,

Jessica

  32. Shegda responded as follows:

From: John Shegda
Sent: Monday, September 16, 2019 10:32 AM
To: Jessica Malloy
Subject: RE: Please read

Jessica,

This is all surprising to me. I truly am sorry that you feel this way, and that you feel that you have been caused distress. I think it would be best to sit and discuss in person, but it seems to me that some issues you mention have been at work under the surface for some significant amount of time. It would appear that our recent talks, like the one about your need to change your schedule, did not address issues that you were feeling, and that you were not comfortable to share them with me. I think, in the best interest of all involved, that a professional HR person should be in the room when we talk. Insperity has been contacted on the matter. I will let you know when our representative is available to come and meet with us. Hopefully it will be today or tomorrow.

Hope to resolve this quickly.

Regards,

John Shegda
M&S Centerless Grinding/Meron Medical
215-675-4144 - w (M&S)
215-366-3020 - w (Meron)
215-778-9566 - c
www.msgrinding.com
www.meronmedical.com

33. The next day on September 17, 2019 Jacobsen spoke with Sherice Sargent (Sargent), Human Resources Specialist, Client Services, at Insperity. Sargent told Jacobsen that Shegda had sent her the email she sent him the day before. Jacobsen reviewed with Sargent why she had complained to Shegda. She told her she feels like she is being cut out of the equation because they don't want to deal with her because she is the only woman. She said she is being outcast and shunned from the management team. She said that Shegda has been retaliating against her since she complained to him last year about Aoun.

34. Also on September 17, 2019, Shegda led a company values meeting during which he said the following. He stated that Meron and M&S were going to merge with KVI Medical. He said that the plan was to join the companies together in January (2020). Shegda said no one had anything to be worried about, this was going to be a good thing as now Meron would be better

8

supported and given more opportunities through KVI's customers. Additionally, Shegda ensured the team that everyone will have a job as this was going to create more work.

35. Two days later on September 19, 2019, Jacobsen had a conference call with Shegda and Sargent. Jacobsen was with Shegda and Sargent was on the phone. Jacobsen asked Shegda why is she being excluded from the management team and he could not give a straight answer. Shegda said he does not know what's happening with Jacobsen's role. Jacobsen said that Aoun is taunting her about her not being involved in the merger transition discussions. She said 'Tony doesn't like me because I am a strong woman, that is why I am being left out.' Shegda said he was disappointed Jacobsen had not come to him about these issues previously, and she reminded him and Sargent that she had and Shegda had not done anything in response to her prior complaints. Both Shegda and Sargent talked down to Jacobsen throughout this meeting.

36. After the conference call, Jacobsen had a separate one on one call with Sargent. Sargent told Jacobsen that she put the issue out there and now it's up to Shegda. Jacobsen told Sargent she feels like she is being demoted without being told for no reason other than Aoun does not like her because she's a woman. Jacobsen told Sargent that Shegda is now really mad at her for bringing up these issues.

37. The next day on September 20, 2019, Shegda came into Jacobsen's office and said they had a meeting with Sargent. Jacobsen had not heard from anyone about this meeting. Shegda briefly spoke with Sargent on his cell phone and then told Jacobsen to call her. When Jacobsen called Sargent, she told Jacobsen that Shegda is offering her an option of two weeks paid leave since he is leaving the country and Aoun needs to be at the shop. Sargent told Jacobsen this was a generous offer and she should take it. Jacobsen told her that she feels further outcast by this and she told her that this was being offered to her because Shegda will not be

9

available for damage control if the situation were to escalate between Aoun and her. Jacobsen asked Sargent if she could think about this over the weekend and Sargent agreed.

38. Jacobsen spoke with Sargent the morning of September 23, 2019. Shegda was present for this call. Jacobsen told Sargent that she had to decline the two weeks paid leave because she felt like it further outcasts her from her co-workers and the company, that she will have work to do when she returns, there will be no coverage for her while she's away and as long as everyone acts professionally there should not be an issue.

39. Shegda interjected and said he understood but did not accept it. He said he was worried that this situation will escalate, Aoun and Jacobsen cannot exist in the same building, he (Aoun) HAS to be there, and Shegda can't leave the country thinking the situation will escalate. Shegda said he spoke with Aoun and he denies taunting Jacobsen and has no idea what she is talking about. Shegda said he was not willing to accept this and it is not a solution for her to stay at work. Sargent chimed in and said Jacobsen would rather take a paid leave than an unpaid leave, which is what she claimed most employers would do. Jacobsen said 'this is a violation of my rights, you cannot force me into a leave of absence. I am feeling like I am in the wrong here.'

40. Shegda interrupted Jacobsen and said 'I am stopping you now.' Shegda went on to say that he is a male and he can be oblivious. He also said he does not believe that the issues between Aoun and Jacobsen can be worked out. He went on to claim that Jacobsen has strained relationships with every person on the transition team (something that he had never said before, nor had anyone else). Jacobsen told Sargent this was retaliation and Sargent said she was making a note of it. Shegda said he hoped this would be a two week period to relieve stress but if Jacobsen doesn't cooperate he's not sure. Shegda said Jacobsen would tentatively be allowed to return to work on October 7 or 8.

41. Later that morning, Jacobsen sent an email to Lauren Schoon (Schoon), the Director of HR at Insperity's Conshohocken office. Schoon is Sargent's manager. Jacobsen emailed Schoon because she felt Sargent was not helping her or taking her seriously and she wanted to talk to someone else. Jacobsen complained that she was being retaliated and discriminated against and what happened to her is a violation of her rights. Schoon told Jacobsen she would respond to her, however she never did.

42. Later that same day, Sargent confirmed that Meron was forcing Jacobsen to take a two week leave of absence during which time she was not supposed to do any work. Further showing the retaliatory nature of this forced leave of absence, Sargent provided Jacobsen with information about an employee assistance plan, clearly implying that it was Jacobsen who had the problem for raising a complaint of sex discrimination, harassment and retaliation.

43. Jacobsen responded to Sargent's September 23 email and said that the 'decision' to place her on a leave of absence was made against her will and has caused her an extreme amount of duress.

44. The next day on September 24, 2019, Jacobsen emailed Frankie Williams (Williams), Insperity's EEO Specialist who was purportedly investigating Jacobsen's sex discrimination and harassment complaint. In her email, Jacobsen attached the August 2017 text message exchange where Aoun had said 'Never send a girl out to do a man's job'. Jacobsen had spoken with Williams earlier that day to give her the background of her current situation. Williams told Jacobsen she was going to investigate her complaint.

45. On October 7, 2019, after having endured a number of calls with Insperity representatives where Jacobsen was interrupted and attacked like she was the bad guy, she had the below email exchange with Insperity.

11

On Oct 7, 2019, at 12:38 PM, Jessica Tarpey <jtarpey84@gmail.com> wrote:
>>> Hello,
>>>
>>> After my last call with Sherice [Sargent] at 11:45 this morning that she ended by hanging up on me, I will no longer receive any further phone calls from Insperity. This is my personal cell phone number that I pay for and the matters being discussed are work related. The calls I have been receiving from Insperity have left me feeling attacked and emotionally abused. I am often interrupted and left feeling accused, when I have done nothing wrong in this situation. Expressing a legitimate concern at my workplace and asking for a solution is no cause to be treated in such a manner. After these calls I am experiencing distress and feel threatened. Human resources is supposed to help with these matters, not make them worse.
>>>
>>> All communication will be done via email from here on.
>>>
>>> Thank you,

>>>
>>> Jessica

>> On Oct 7, 2019, at 5:56 PM, Sherice Sargent <Sherice.Sargent@insperity.com> wrote:
>>
>> Hi Jessica
>> I am in receipt of your request. As a result, please accept this email as notification of your return to work schedule and meeting invite for tomorrow, Tuesday October 8, 2019. Your arrival time will be 3p. John and I will meet to discuss next steps.
>>
>> Feel free to email any questions.
>>
>> Regards,
>> Sherice Sargent
>>
>> Sent from my iPhone

      46. Jacobsen's return to work meeting was then moved from October 8 to October 9.

      47. On October 8, 2019, the day before Jacobsen was scheduled to return to work, Williams emailed her to say that her 'investigation' revealed that Jacobsen was not discriminated or retaliated against.

      48. On October 9, Jacobsen emailed Williams before she was scheduled to attend a return to work meeting with Shegda and Sargent. In her October 9 email, Jacobsen provided Williams

with additional information to support her discrimination, harassment and retaliation complaint against both Meron and Insperity.

49. When Jacobsen returned to work on October 9, she had a meeting in the morning with Shegda and Sargent. Both were physically present. Jacobsen was informed she was being terminated.

50. Meron subjected Jacobsen to a severe or pervasive sexually hostile and gender discriminatory hostile work environment that eventually also became a retaliatory hostile work environment.

51. Meron fired Jacobsen in retaliation for her repeated harassment and discrimination complaints and because she's a woman.

52. Insperity fired Jacobsen in retaliation for her repeated harassment and discrimination complaints

53. Jacobsen has suffered, is now suffering and will continue to suffer emotional distress, embarrassment, humiliation, inconvenience, mental anguish, career damage and other losses as a direct result of Meron's and Insperity's illegal conduct.

54. Meron and Insperity engaged in intentional discrimination against Jacobsen with malice or reckless indifference to her rights under Title VII.

**V.    CLAIMS**

**Count I – Gender Discrimination/Hostile Work Environment (Title VII and PHRA)**
**Jacobsen v. Meron**

55. Paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56. The acts, failures to act, practices and policies of Meron set forth above constitute gender discrimination/gender-based hostile work environment in violation of Title VII and the PHRA.

57. As a result of Meron's illegal gender discrimination, Jacobsen has suffered harms and losses in the form of back pay and benefits, front pay and benefits and emotional/mental distress including anxiety, stress, humiliation, career damage and embarrassment.

WHEREFORE, Jacobsen demands judgment in her favor and against Meron for compensatory damages, back pay, reinstatement or front pay, lost benefits, negative tax consequence damages, punitive damages (under Title VII only), attorney's fees plus costs, declaratory relief that the conduct engaged in by Meron violated Jacobsen's civil rights, equitable/injunctive relief directing Meron to cease any and all unlawful gender discrimination, and such other relief as the Court shall deem proper.

### Count II – Retaliation (Title VII and PHRA)
### Jacobsen v. Meron

58. Paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

59. The acts, failures to act, practices and policies of Meron set forth above constitute retaliation (retaliatory hostile work environment and retaliatory termination) in violation of Title VII and the PHRA.

60. As a result of Meron's illegal retaliation, Jacobsen has suffered harms and losses in the form of back pay and benefits, front pay and benefits and emotional distress including anxiety, stress, humiliation, career damage and embarrassment.

WHEREFORE, Jacobsen demands judgment in her favor and against Meron for compensatory damages, back pay, front pay in lieu of reinstatement, lost benefits, negative tax consequence damages, punitive damages (under Title VII only), attorney's fees plus costs, declaratory relief that the conduct engaged in by Meron violated Jacobsen's civil rights, equitable/injunctive relief directing Meron to cease any and all unlawful retaliation, and such other relief as the Court shall deem proper.

### Count III – Retaliation (Title VII and PHRA)
### Jacobsen v. Insperity

61. Paragraphs 1-54 are incorporated by reference as if fully set forth herein.

62. The acts, failures to act, practices and policies of Insperity set forth above constitute retaliation (retaliatory hostile work environment and retaliatory termination) in violation of Title VII and the PHRA.

63. As a result of Insperity's illegal retaliation, Jacobsen has suffered harms and losses in the form of back pay and benefits, front pay and benefits and emotional distress including anxiety, stress, humiliation, career damage and embarrassment.

WHEREFORE, Jacobsen demands judgment in her favor and against Insperity for compensatory damages, back pay, front pay in lieu of reinstatement, lost benefits, negative tax consequence damages, punitive damages (under Title VII only), attorney's fees plus costs, declaratory relief that the conduct engaged in by Insperity violated Jacobsen's civil rights, equitable/injunctive relief directing Insperity to cease any and all unlawful retaliation, and such other relief as the Court shall deem proper.

Respectfully submitted,

By: /s/ Scott M. Pollins
Scott M. Pollins/ Pa. Atty. Id. No. 76334
**Pollins Law**
303 W. Lancaster Ave., Ste. 1C
Wayne, PA 19087
(610) 896-9909 (phone)/(610) 896-9910 (fax)
scott@pollinslaw.com (email)

Date: 12/18/2020          Attorney for Plaintiff, Jessica L. Jacobsen